**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JESSIE B. THOMAS**

**VERSUS**

**MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 07-890-FJP-CN**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

Signed in chambers in Baton Rouge, Louisiana, April 9, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JESSIE B. THOMAS**

**VERSUS**

**MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 07-890-FJP-CN**

## MAGISTRATE JUDGE'S REPORT

Plaintiff Jessie B. Thomas seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act.  In making that final decision, the Administrative Law Judge (ALJ) reached the second step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that, **through the date last insured**, the objective medical evidence failed to establish the existence of a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms. (Tr. 15).

## FACTS AND PROCEDURAL HISTORY

On March 24, 2005, plaintiff protectively filed her application for a period of disability and disability benefits alleging disability due to depression, back/neck problems, arthritis, and knee problems beginning December 2, 1984. (Tr. 39-50.)[2] Plaintiff's claim was

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

[2] While plaintiff's application does not specifically outline her alleged impairments, plaintiff's impairments are set forth in her Disability Report at transcript page 49 of the record.  Plaintiff does not list Post Traumatic Stress Disorder (PTSD) specifically as one of her impairments.

denied at the initial level and plaintiff requested a hearing before an ALJ. The ALJ held a video hearing on May 1, 2007. (Tr. 316-326.) On May 25, 2007, the ALJ issued an adverse decision denying disability. (Tr. 10-16.) The Appeals Council declined review on September 26, 2007, (Tr. 3-5) and the decision became the final decision of the Commissioner, which decision is now before this Court.

## ANALYSIS

Judicial review of a final decision of the ALJ denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ's decision was supported by substantial evidence existing in the record as a whole and whether the ALJ applied the proper legal standards.[3] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

---

[3] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[4]  Only if the plaintiff proves that she is no longer able to work in her past relevant work does the burden shift to the Commissioner to establish that the plaintiff nonetheless has the ability to engage in other substantial gainful activity.[5]

In the present case, the ALJ found at step two that the plaintiff was not under a disability during the **relevant period**.  Under the Social Security Act, a plaintiff must establish disability on or before the date he/she was last insured in order to be entitled to a period of disability and disability insurance benefits.[6]  Plaintiff's application states that her alleged onset date was December 2, 1984, and the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on September 30, 1989. (Tr. 15, Finding 1.)  Therefore, the issue is whether there is substantial evidence in the record to support the Commissioner's decision that plaintiff was not disabled from December 2, 1984, her alleged onset date, through September 30, 1989, the date plaintiff was last insured (the relevant period).

A review of the medical records indicates that the records span from 2002 through 2007, and that plaintiff currently suffers from degenerative joint disease, degenerative disc

---

[4] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[5] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

[6] King v. Barnhart, 372 F. Supp. 2d 932 (S.D. Tex. 2005) (citing Barraza v. Barnhart, 61 Fed. Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003)(citing Ivy v. Sullivan, 898 F.2d 1045, 1048 (5th Cir. 1990))("Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis."); *See also*, 20 C.F.R. §§ 404.315, 404.320.

disease, and has been treated for depression. It should be noted that plaintiff's depression was diagnosed in 2002 as major depressive disorder (MDD), and was later diagnosed as post traumatic stress disorder (PTSD) in 2003.[7]

The record is void of any medical records from 1984 through 1989, the relevant period. Upon receiving the ALJ's adverse decision, plaintiff requested a review by the Appeals Council. On July 23, 2007, the Appeals Counsel informed plaintiff through her attorney representative that he could submit more evidence on behalf of the plaintiff and that the Council would not act for 25 days. (Tr. 7.) On September 26, 2007, the Appeals Council acknowledged receipt of the additional evidence, which consisted of "Contentions dated August 13, 2007, signed and submitted by C.H. Thornton, Jr., claimant's representative." (Tr. 6, 314-315.) This was the only additional evidence submitted by plaintiff, and in this correspondence, plaintiff's representative admits that there are no other records available to support plaintiff's Title II claim for disability during the relevant period. Subsequently, the Appeals Council denied plaintiff's request for review. (Tr. 3.)

As the ALJ points out, even allowing that plaintiff's conditions may have existed for a decade prior to the beginning of the medical records, that could only, at best, relate back to 1992, which is several years after September 30, 1989, the date the plaintiff was last insured. Since there was no evidence to suggest that plaintiff was disabled from December 1984 to September 1989, the ALJ found no disability.

---

[7] The plaintiff first received mental health treatment in 1995 by the VA clinical psychologist, Dr. Joseph I. Constans, but it was not until February 2002 that Dr. Constans diagnosed plaintiff with major depressive disorder (MDD). Further, it was not until April 2003, that Dr. Constans diagnosed plaintiff with post traumatic stress disorder (PTSD). (Tr. 74, 305, 280.)

Plaintiff argues that the ALJ erred in concluding that the absence of objective medical evidence regarding her Post Traumatic Stress Disorder (PTSD) prior to the date she was last insured precluded a finding of disability. She argues that the treatment and diagnosis of her PTSD by her treating physician, Dr. Constans, constitutes a retrospective diagnosis allowed by the Fifth Circuit Court of Appeal in <u>Likes v. Callahan</u>, 112 F.3d 189 (5th Cir. 1997). The plaintiff in <u>Likes</u> was a veteran alleging a disability based upon PTSD that stemmed from an event that occurred during his military tenure in Vietnam some 20 years earlier. There, the ALJ found that there was no objective medical evidence contemporaneous with this military service linking his alleged PTSD to his Vietnam experience. The Fifth Circuit, however, stated that Likes had a retrospective diagnosis of PTSD provided by his current treating physician indicating that he had suffered from PTSD since 1996, and presented corroborating lay testimony regarding the disassociated and anger episodes he evidenced subsequent thereto.[8] Therefore, the Fifth Circuit reversed and remanded the case stating that the ALJ failed to consider the retrospective diagnosis in conjunction with the lay testimony presented. Plaintiff suggests that the <u>Likes</u> case provides controlling precedence for the instant case.

The Court, however, concurs with defendant commissioner that the <u>Likes</u> case is distinguishable. In the <u>Likes</u> case, there were two mental health professionals who offered

---

[8] The <u>Likes</u> Court, using the Eighth Circuit's decision in <u>Jones</u> as persuasive, also stated that "properly corroborated retrospective medical diagnoses can be used to establish disability onset dates." In the <u>Jones</u> case, Jones sought diagnosis and treatment for his PTSD condition, and three mental health professionals diagnosed Jones as suffering from PTSD. They found implicitly that his PTSD symptoms had been present since he left Vietnam in 1968. Further, Jones' records included statements from Jones' relatives that his personality was changed dramatically for the worse by his Vietnam experience.

opinions that Mr. Likes suffered from chronic PTSD long before his date last insured, and his wife testified to his poor anger control and disassociative episodes, also prior to his DLI.[9] Here, the only medical evidence presented by plaintiff was the one page letter by Dr. Joseph I. Constans, Ph.D., a Staff Psychologist of the VA, wherein he opines that plaintiff has had a number of traumatic events in her past and among them sexual trauma occurring while in the military.[10] [11] With regard to the lay testimony, plaintiff uses her own self-serving comments to her counselor in 2002 and 2003 as constituting the lay evidence she needs to come within the parameters of the Likes case. It is also noted that during the administrative hearing, plaintiff's only discussion relative to her PTSD was that she was still on medication and being counseled by a social worker since Dr. Constans was moved to another department in the VA. There are, however, no medical records to confirm this.

Further, plaintiff's medical records evidence is contradictory to Dr. Constans June 22, 2005 letter. During his treatment of plaintiff, Dr. Constans continuously writes in his progress notes that plaintiff's depressive symptoms were caused by numerous stressors such as severe financial problems, marital problems, increased back pain and chronic knee pain.

The records reveal that in May 2002, Dr. Constans opines that "Patient husband has been out of work due to health problems. The veteran's level of depressive symptoms have

---

[9] Likes, 112 F.3d at 190.

[10] Dr. Constans goes on to say that because plaintiff continues to unwantedly re-experience miliary-related trauma through periodic dreams and daily intrusive thoughts, it is his *opinion* that her military-related trauma was integral in causing her current emotional conditions. (Tr. 82.)

[11] An ALJ may give less weight to a treating physician's opinion when it is to the contrary and so brief and conclusory that it lacks strong persuasive weight. Scott v. Heckler, 770 F.2d 482(5th Cir. 1985).

significantly worsened secondary to this stressor. (Tr. 304.) In August 2002, he states "her increased depressive symptoms have coincided with increased pain complaints."(Tr. 300.) In September 2002, it is noted that "Current complications of emotional state include severe financial problems and increased back pain." (Tr. 296.)  On January 6, 2003, Dr. Constans writes that "Patient must care for 101 year old mother-in-law who is very demanding and she feels emotionally exhausted." (Tr. 287.)   Not until April 29, 2003 do the records mention PTSD and plaintiff mentions her military sexual trauma.  Dr. Constans states that he did not diagnose plaintiff with PTSD until now because she never wanted to discuss it, which is common and consistent with PTSD. (Tr. 280.)  Then, on August 28, 2003, Dr. Constans reports "This veteran reported increased depressive symptoms associated with pain in knees....Other stressors include caring for mother-in-law, financial problems, and husband's health problems. (Tr. 267.)  In January 2004 the plaintiff's mood was slightly improved and plaintiff was able to leave the house more often and socialize. (Tr. 254.)  In June 2004, Dr. Constans writes that her depressive symptoms largely relate to increased pain and financial stressors. (Tr. 245.)  On October 15, 2004, the progress notes "Emotional status further complicated by chronic pain." (Tr. 237.)  In December 2004, Dr. Constans states that her primary problem appears to be chronic pain. (Tr. 230.)  In February 2005 plaintiff continues to complain of pain that limits her activity which in turn increases depressive symptoms. (Tr. 227.)  Then on May 12, 2005, Dr. Constans opines that plaintiff's primary stressors include care of mother-in-law, physical disabilities, and financial problems. (Tr. 222.)   As stated above, Plaintiff's PTSD was not diagnosed by Dr. Constans until 2003, and plaintiff's "past

8

trauma" is not mentioned again until August 2005. (Tr. 219.) This is the last entry in the medical records regarding plaintiff's treatment by Dr. Constans, and there is no evidence of further treatment of plaintiff's depression by any other medical source since this date.[12]

While this Court agrees that PTSD is considered an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation, plaintiff does not provide the Court with any evidence, other than her treatment by Dr. Contans, to support her claim that her onset date would have begun with her trauma in the military.

Considering the medical evidence provided by plaintiff, and the testimony at the administrative hearing, the Court finds that the Likes case is distinguishable from the instant case, and therefore, plaintiff's assertion that there exists "retrospective diagnoses" and that the ALJ erred in failing to consider such evidence has no merit.[13]

Plaintiff then argues that the ALJ did not fulfill his duty to develop the record regarding the onset date of her alleged PTSD symptoms. Plaintiff cites to Regulation 20 C.F.R. § 404.1512(d) "Evidence" to support her argument. A full reading of the regulation defines the responsibility of the plaintiff and the commissioner as follows:

> (c) *Your responsibility*. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how

---

[12] An ALJ may give less weight to a treating physician's opinion when it is to the contrary and so brief and conclusory that it lacks strong persuasive weight. Scott v. heckler, 770 F.2d 482 (5th Cir. 1985).

[13] Plaintiff has the burden of proof to show than an impairment is disabling. 20 C.F.R. § 404.1512; Ivy v. Sullivan, 898 F.2d 1045, 1048 (5th Cir. 1990)("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status.").

your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

* * *

(d) *Our responsibility*.  Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.  We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

When a plaintiff contends that an ALJ has failed to properly develop the evidence of record, the Courts will reverse the ALJ's decision only if a claimant shows that he/she was prejudiced as a result.  Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000); Ripley v. Chater, 67 F.3d 522 n.22 (5th Cir. 1995); Kane v. Heckler, 731 F.2d 1216, 1219-20, (5th Cir. 1984) (Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.) Plaintiff has failed to attempt any showing of prejudice; she has failed to show, identify, or proffer any evidence regarding her PTSD that would have changed the decision of the ALJ.  Further, plaintiff's representative admitted in his letter to the appeals council that there were no records for the time period in question.[14]

---

[14]   As stated earlier, plaintiff was given the opportunity by the Appeals Council to supplement her medical records; however, chose to present the Appeals Council with her legal representative's August 13, 2007 letter, which in effect states that there are no other medical records to support her Title II claim, and that, because of the "remoteness of available medical records from the 1980s," a Title XVI claim would have been more appropriate. (Tr. 314-315.)

Therefore, the Court finds that the ALJ's decision of no disability was proper in that the record before him did not establish the existence of a medically determinable impairment that could have reasonably been expected to produce the plaintiff's symptoms, from December 1984, her alleged onset date, through September 30, 1989, the last date she was eligible for disability insurance benefits.

Further, the Court finds that there was no necessity for the ALJ to develop the record of an earlier period since plaintiff did not show any prejudice and could not, by her own admission, provide any further records to support her alleged disability.

Finally, plaintiff argues that the ALJ did not establish a proper onset date.  Social Security Ruling 83-20 provides the framework by which an ALJ is to determine the onset date of disability.  The Ruling states that the onset date is "the first day an individual is disabled as defined in the Act and the Regulations."  Since the ALJ did not find that plaintiff was disabled, no inquiry into an onset date was required.  *See*, Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date.  In short, SSR 83-20 does not apply."); Nix v. Barnhart, 160 Fed. Appx. 393, 2005 WL 3505246 (C.A. 5.(Tex.)) citing, Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) (Since there was no finding that the claimant is disabled as result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required.").

For the reasons set forth above, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's findings that plaintiff was not disabled during the

relevant time period, and that the ALJ followed the proper legal standards in making this determination.

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the plaintiff's appeal be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, April 9, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**